O

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL, POSTAGE PREPAID, TO (SEE BELOW) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE

TO:   DATE:   DEPUTY CLERK:

Petitioner August 27, 2015 by DV

FILED
CLERK, U.S. DISTRICT COURT

8/27/2015

CENTRAL DISTRICT OF CALIFORNIA
BY: ___DV_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MILTON M. AREVALO, | Case No. CV 14-3967-DFM |
| Petitioner, | |
| v. | MEMORANDUM AND ORDER OF UNITED STATES MAGISTRATE JUDGE |
| WARDEN KATAVICH, | |
| Respondent. | |

## I.

## BACKGROUND

**A.   Procedural History**

On November 14, 2011, a jury convicted Petitioner Milton M. Arevalo ("Petitioner") of two counts of criminal threats, one count of kidnapping, and one count of second-degree robbery. Clerk's Transcript ("CT") 113-16. The jury also found firearm allegations to be true. Id. Petitioner was sentenced to a state prison term of 19 years and four months. CT 156-61.

Petitioner appealed his conviction to the California Court of Appeal. Respondent's Notice of Lodging, Lodged Document ("LD") 3, 5. On November 18, 2013, the state appellate court affirmed Petitioner's conviction

in a reasoned opinion. LD 6. On February 26, 2014, the California Supreme Court summarily denied Petitioner's petition for review. LD 8.[1]

On May 22, 2014, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, raising four grounds for relief. Dkt. 1 ("Petition"). Petitioner also filed an election regarding consent to proceed before a United States Magistrate Judge in which he consented to have a United States Magistrate Judge conduct all further proceedings in this case. Dkt. 3. On May 28, 2014, this Court dismissed the Petition with leave to amend, noting that it did not appear that Petitioner had exhausted his state remedies for two of the four grounds for relief alleged in the Petition. Dkt. 4 at 2-3. On June 24, 2014, Petitioner filed a First Amended Petition for Writ of Habeas Corpus, excluding those two apparently unexhausted grounds for relief. Dkt. 7 ("FAP").[2] On October 14, 2014, after being granted extensions of time, Respondent filed an Answer to the Petition and a Memorandum seeking its dismissal. Dkt. 17 ("Answer"). Respondent also simultaneously filed a consent to proceed before a United States Magistrate Judge, leading to the assignment of this case to the undersigned for final disposition. Dkt. 16, 19.

The FAP raises the following claims of error: (1) because the prosecution presented insufficient evidence to support Petitioner's conviction for two

---

[1] The California Supreme Court denied the petition "without prejudice to any relief to which [Petitioner] might be entitled after this court decides People v. Diaz." LD 8; see LD 9. On April 6, 2015, the California Supreme Court held that when a criminal defendant's out-of-court statements are the basis for a prosecution for criminal threats, an instruction to the jury to consider such evidence with caution is appropriate, but the trial court is not required to give the instruction sua sponte. People v. Diaz, 60 Cal. 4th 1176, 1181 (2015). Petitioner raised this issue in his appellate briefs but does not raise it here.

[2] All page citations are to the CM/ECF pagination.

separate counts of criminal threats, Petitioner was convicted in violation of his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process, FAP at 5; see id. 27-34; and (2) because the trial court erred in failing to instruct the jury that it must agree unanimously as to which two of Petitioner's five statements constituted criminal threats, Petitioner was convicted in violation of his right to due process under the Fifth and Fourteenth Amendments, id. at 5-6; see id. at 34-43.

**B.      Summary of the Evidence Presented at Trial**

The underlying factual summary is taken from the unpublished opinion of the California Court of Appeal.[3] Unless rebutted by clear and convincing evidence, these facts are presumed correct. Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254 (e)(1). Petitioner has not attempted to overcome this presumption.

> Arevalo and Suyapa Morales met in August 2010, and began living together. In April 2011, Morales decided to end the relationship. She moved out of the apartment she was sharing with Arevalo and moved in with a friend, Javier Medina. Morales did not tell Arevalo she was moving out because she did not want him to look for her. Morales and Medina testified that they did not have a romantic relationship.
>
> Arevalo tried to contact Morales, calling her 30 times a day for about a week. Morales did not answer the phone or speak with Arevalo.
>
> Arevalo went to see the manager of a bakery in Maywood where he believed that Medina, Morales's new roommate, was

---

[3] In all quoted sections of the Report and Recommendation, Petitioner's name has been replaced with "Petitioner."

employed. Arevalo told the bakery manager that he wanted to speak to him about Medina. The manager thought Arevalo was talking about another person with the last name Medina who worked at the bakery as a supervisor. Arevalo was despondent and showed the manager photographs of Morales and her son. He told the manager that Medina had kidnapped his wife and son, and asked for information about how to contact him. The manager explained that he could not give out personal information about his employees. Arevalo became insistent and told the manager that he should help him because Medina was harassing Morales's family members.

A few days later an employee of the bakery, Francisco Sanchez, finished work at approximately 2:30 a.m. and left in his car with a co-worker, Adelia Veliz, who needed a ride home. Veliz forgot some flowers at work that she meant to take home with her so Sanchez turned around and drove back to the bakery. As he drove toward the bakery, he noticed a red Toyota following him.

When Sanchez arrived at the bakery, he escorted Veliz to the door. As he walked back to his car, Arevalo got out of the Toyota, pulled out an automatic firearm and pointed it toward Sanchez. According to Sanchez, Arevalo then walked up next to him, pointed the gun directly at his head, and started swearing at him. Arevalo told Sanchez he had been looking for him and said: "This is the end of it" and "it's going to take you. It's going to carry you away." Sanchez interpreted Arevalo's statements as a threat to kill him.

Sanchez did not know Arevalo and told him so. He also told Arevalo that he had no idea who Suyapa Morales was. Arevalo

pointed the gun at Sanchez and responded: "Don't play dumb . . . You're going to see right now what's going to happen to you." Arevalo grabbed Sanchez by the collar and walked him towards the car. A second person got out of the car and forced Sanchez at knife point to get into the back seat. Arevalo got in the back seat with him. Arevalo pointed the gun at Sanchez's rib cage and ordered him to tell him where he was keeping Morales. Arevalo asked where Sanchez lived and told him again, "Don't play dumb." Sanchez said that he lived near Florence and Atlantic. The three [sic] men then took him to a dark alley where Arevalo told him he didn't believe that Sanchez lived near Florence and Atlantic. When Sanchez continued to assert that he was not Javier Medina and that he lived near Florence and Atlantic, Arevalo hit him in the ribs. Sanchez was able to pull out an identification card and show it to Arevalo who took it, verified that he was not Javier Medina, and threw it back at him.

Arevalo then told Sanchez to take him to Medina's residence and that if he didn't "you're going to stay here." Sanchez interpreted this statement to mean that if Arevalo did not find Medina, he would kill Sanchez. Sanchez did not know where the person named Medina from the bakery lived but he had seen him go toward Slauson Street after work so he directed Arevalo toward an apartment building on Slauson.

Arevalo told Sanchez to use his cell phone to call Medina. Sanchez said he didn't have a cell phone. Arevalo pointed his gun to the back of Sanchez's head and told him that he was going to search him and that if he had lied he was going to "stay right here." Sanchez took this to mean that Arevalo would kill him if he

lied about not having a cell phone. Arevalo searched through Sanchez's pockets and verified that he was not carrying a phone.

Using his own cell phone, Arevalo dialed Javier Medina's number and told Sanchez that when Medina answered Sanchez should tell him that he was outside waiting for him. The phone rang several times, but no one answered. Arevalo tried calling approximately four more times and then told Sanchez to go inside the apartment complex and knock on the doors to find out where Medina lived. Arevalo told Sanchez that if Medina came out, he should not make a "wrong move" or he would "stay right there." Sanchez again took this to mean that he would be killed if he failed to follow Arevalo's instructions.

Sanchez and Arevalo got out of the car and walked into the apartment complex with Arevalo pointing his gun at Sanchez's back. Sanchez knocked on doors and yelled, "Javier, this is Francisco, open, open up." It was approximately 3:00 in the morning and Sanchez hoped that by knocking and yelling loudly someone would call the police. After Sanchez knocked on three or four doors the man with the knife got out of the car and told Arevalo that they were waking up a lot of people and that they should go. The man with the knife handed Arevalo Sanchez's identification card. Arevalo told Sanchez: "Look right here. I have all your information. I know where you live.... [I]f you tell anything to the police, if you tell anything to Javier, I'll go to get you and your family." Sanchez interpreted this to mean that Arevalo would kill him and his family if he went to the police. Arevalo allowed Sanchez to leave but when Sanchez asked for his card back, Arevalo refused to return it.

>Sanchez returned to the bakery where he learned that the manager had called the police. When the police arrived Sanchez gave them his statement. The next day the police arrested Arevalo. In a search of Arevalo's apartment the police found Sanchez's identification card on top of a kitchen cabinet.

LD 6 at 2-5.

## II.
## STANDARD OF REVIEW

Petitioner's claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, federal courts may grant habeas relief to a state prisoner "with respect to any claim that was adjudicated on the merits in State court proceedings" only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Overall, AEDPA presents "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, --- U.S. ---, 134 S. Ct. 10, 16 (2013). AEDPA presents "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks omitted). The prisoner bears the burden to show that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). In other words, a state-court "determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness" of that ruling. Id. at 101 (internal quotation marks omitted). Federal habeas corpus review therefore serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. at 102-03 (internal quotation marks omitted).

Petitioner raised the claims in the FAP on direct appeal, and those claims were denied by the California Court of Appeal in a reasoned decision. See LD 6. The claims were then presented in Petitioner's petition for review, which the California Supreme Court summarily denied. See LD 8. Thus, for purposes of applying the AEDPA standard of review, the California Court of Appeal decision on direct appeal constitutes the relevant state court adjudication on the merits for this claim. See Johnson v. Williams, --- U.S. ---, 133 S. Ct. 1088, 1094 n.1 (2013) (noting that federal habeas court "look[s] through" summary denial of claim to last reasoned decision from the state courts to address the claim); see also Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991) (noting that where petitioner exhausts a claim by presenting it on direct appeal, no state habeas petition is necessary).

## III.

## PETITIONER'S CHALLENGES TO HIS CONVICTIONS DO NOT WARRANT HABEAS RELIEF

Petitioner contends that the prosecution submitted insufficient evidence to support two separate counts of criminal threats and that his conviction on those counts therefore violates his federal constitutional rights to due process and a jury trial. FAP at 5. Relatedly, Petitioner contends that the trial court erred in failing to instruct the jurors that they must unanimously agree as to which two of his five statements constituted criminal threats, and that his

conviction thus violated federal due process. Id. at 5-6.

**A.     Decision of the California Court of Appeal**

The state appellate court rejected Petitioner's claims as follows:

> The information charged Arevalo in identical language with two counts of making a criminal threat against Sanchez "on or about May 11, 2011." The jury found Arevalo guilty of both counts. On appeal he contends that both convictions must be reversed because by the prosecution's own admission Arevalo made more than two threats, the prosecution failed to elect which two statements it was relying on for the convictions and the court failed to instruct the jury it must unanimously agree on the two statements that support the convictions. (People v. Norman (2007) 157 Cal.App.4th 460, 464.) Alternatively, Arevalo argues that one of the two convictions must be reversed because all of the threats against Sanchez constituted just one offense. (People v. Stankewitz (1990) 51 Cal.3d 72, 100 [no instruction on unanimity is required when the acts alleged are so closely connected as to form a continuing course of conduct].)
>
> We do not agree that all of Arevalo's threats against Sanchez constituted just one offense as a matter of law. For example, the jury could reasonably have found that the threats Arevalo made in order to persuade Sanchez to help him find Morales had a separate and independent purpose from the threats Arevalo made in order to dissuade Sanchez from going to the police and thus constituted two separate offenses.
>
> But even assuming that the court erred in not giving a unanimity instruction that is not the end of the analysis. We agree

9

with the People that failure to give a unanimity instruction is governed by the harmless-beyond-a-reasonable-doubt standard of Chapman v. California (1967) 386 U.S. 18, 24. (See People v. Smith (2005) 132 Cal.App.4th 1537, 1545.) Failure to give the instruction is harmless beyond a reasonable doubt if the record shows that no rational basis exists for the jury to believe that the defendant made one threat but not another. (People v. Deletto (1983) 147 Cal.App.3d 458, 472.) Such is the case here. Arevalo's threats occurred over a relatively short period of time (approximately one hour) and in the same location—the back seat of Arevalo's car. Finally, Arevalo offered a unitary defense of mistaken identity to both counts and the jury rejected it. Once they decided not to believe Arevalo's only defense, none of the jurors could have had a reasonable doubt that Arevalo made all the threats testified to by Sanchez. (Cf. People v. Wolfe (2003) 114 Cal.App.4th 177, 188.)

LD 6 at 6-7 (footnote omitted).

**B.  Sufficiency of the Evidence of Two Counts of Criminal Threats**

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970); accord Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H., 408 F.3d at 1274. On direct review of a sufficiency of the evidence claim, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443

U.S. 307, 319 (1979); accord Juan H., 408 F.3d at 1274. On habeas review, a federal court must apply the Jackson standard "with an additional layer of deference." Juan H., 408 F.3d at 1274. Federal habeas relief is available only if the state court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of Jackson. Id. at 1275 n.13; Coleman v. Johnson, --- U.S. ---, 132 S. Ct. 2060, 2062 (2012) (per curiam). The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Chein v. Shumsky, 373 F.3d 978, 983-84 (9th Cir. 2004) (en banc) (citation omitted); accord Coleman, 132 S. Ct. at 2064. In performing a Jackson analysis, a jury's credibility determinations are "entitled to near-total deference." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). When the factual record supports conflicting inferences, the federal court must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and the court must defer to that resolution. Jackson, 443 U.S. at 326.

Petitioner characterizes his first claim as challenging the sufficiency of the evidence of two counts of criminal threats. See FAP at 5, 29-36. He does not contend, however, that the prosecution failed to establish each of the five elements required for conviction under California Penal Code Section 422.[4]

---

[4] To convict a person for criminal threats, the prosecution must establish that: (1) the defendant willfully threatened to commit a crime that would cause death or great bodily injury to another; (2) the defendant intended that his statement be taken as a threat, even if he did not intend to carry it out; (3) the threat was on its face and under the circumstances so unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat actually caused the victim to be in sustained fear for his safety or that of his family; and (5) his fear was reasonable under the circumstances. People v. Toledo, 26 Cal. 4th 221, 227-28 (2001) (quoting Cal. Penal Code § 422).

See FAP at 5, 28-29. Rather, Petitioner contends that the five statements established at trial were part of a continuous course of conduct, and thus constitute only a single offense under California law. FAP at 29, 36. Specifically, Petitioner emphasizes that his statements were made "during the course of a single kidnapping incident while Sanchez was continuously under the implicit threat that he would be shot" and were "directed at a single focused purpose" of "obtaining Sanchez's assistance . . . in . . . locat[ing] Javier Medina." FAP at 31, 36; see People v. Dieguez, 89 Cal. App. 4th 266, 275-76 (2001) (as modified) (finding that "continuous course of conduct exception" applied to false statements made on single doctor's visit that were "successive, compounding, and interrelated one to another" and aimed at single objective); People v. Jefferson, 123 Cal. App. 2d 219, 221 (1954) (holding that when defendant slashed with knife at officers, was disarmed, then drew second knife and resumed slashing, actions were "part of one and the same transaction" and punishable as single offense (citation omitted)). Petitioner thus contends that he cannot be convicted of more than one count of making criminal threats.

Insofar as Petitioner alleges that the state courts erred in applying California law, he fails to state a claim that is cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state court determinations on state-law questions"); Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). Moreover, this Court is bound by the California Court of Appeal's conclusion that Petitioner's statements did not constitute a single offense under the continuous course of conduct rule because they were not aimed at accomplishing the same goal. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (reiterating that state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds federal court

1 on habeas review); see LD 6 at 6 ("[T]he jury could reasonably have found that
2 the threats [Petitioner] made in order to persuade Sanchez to help him find
3 Morales had a separate and independent purpose from the threats [Petitioner]
4 made in order to dissuade Sanchez from going to the police."); People v.
5 Perez, 23 Cal. 3d 545, 551 (1979) (explaining that when defendant entertains
6 multiple objectives, he may be punished for independent violations committed
7 in pursuit of each objective, even though violations were parts of otherwise
8 indivisible course of conduct).

9       To the extent that Petitioner argues that the state court's failure to treat
10 the criminal threats as part of a single course of conduct violated his federal
11 constitutional rights, such an argument also fails. There is no federal
12 Constitutional right to a single punishment for a series of wrongful acts. See
13 Watts v. Bonneville, 879 F.2d 685, 688 (9th Cir. 1989) ("Nothing in the
14 Constitution prohibits [separate punishments for separate crimes committed in
15 the same act]; indeed, in applying federal law, this court routinely has upheld
16 convictions for multiple crimes aided and abetted by a single course of
17 conduct."); cf. Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993) ("There
18 is no federal Constitutional right to merger of convictions for purposes of
19 sentencing."). Rather, federal habeas relief is available only if the state court
20 determination that the evidence was sufficient to support a conviction was an
21 "objectively unreasonable" application of Jackson to the substantive elements
22 of the criminal offense. Juan H., 408 F.3d at 1275 n.13; Coleman, 132 S. Ct. at
23 2062, 2064; Shumsky, 373 F.3d at 983. Here, substantial evidence supported
24 Petitioner's conviction for two counts of criminal threats because Sanchez
25 testified that Petitioner threatened Sanchez with immediate bodily harm five
26 times, intending that Sanchez would take those statements as threats, and
27 Sanchez reasonably feared for his life, given that Petitioner was armed with an
28 automatic weapon and accompanied by a man armed with a knife. See People

v. Toledo, 26 Cal. 4th 221, 227-28 (2001); Cal. Penal Code § 422.

Nor has Petitioner established a violation of his right to a jury trial under the Sixth Amendment. Petitioner does not make an explicit Sixth Amendment argument. See FAP at 5, 29-30, 36. To the extent he contends that the trial court failed to instruct the jury regarding the continuous conduct exception, as noted above, the California Court of Appeal found that exception inapplicable to Petitioner's case, a finding that binds this Court, Bradshaw, 546 U.S. at 76, and the state appellate court's finding does not implicate any parallel federal Constitutional right, Watts, 879 F.2d at 688.

Thus, the California Court of Appeal's finding that Petitioner's conduct constituted more than a single offense was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court. See 28 U.S.C. § 2254(d).

## C. Unanimity Instruction

Petitioner also asserts a due process claim grounded in the state court's failure to instruct the jury that it must unanimously agree which two of Petitioner's five statements constituted criminal threats. See FAP at 5-6, 41-45.

As a threshold matter, Respondent contends that Petitioner's instructional claim is barred by Teague v. Lane, 489 U.S. 288 (1989). See Horn v. Banks, 536 U.S. 266, 272 (2002) ("[A] federal court considering a habeas petition must conduct a threshold Teague analysis when the issue is properly raised by the state."). In Teague, the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310. "In general . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." Id. at 301. In other words, "a case announces a new rule if the result was not dictated

by precedent existing at the time the defendant's conviction became final." Id.[5] Here, Respondent contends that granting relief on Petitioner's instructional error claim would require that a new rule of constitutional law be announced – namely, "that a state criminal defendant has a federal constitutional right to a unanimous jury verdict in noncapital criminal cases corresponding to the right recognized by state constitutional law and is thus entitled to a jury unanimity instruction as a matter of federal constitutional law." Answer at 14. Such a rule has never been announced by the Supreme Court or the Ninth Circuit. Nor does it fall into one of the exceptions to Teague.[6] Accordingly, the Court concludes that Petitioner's instructional error claim is barred by Teague.

Alternatively, Petitioner's claim fails on the merits. Challenges to state jury instructions are generally questions of state law and are thus not cognizable on habeas review. See Estelle, 502 U.S. at 71-72. In order to merit federal habeas relief on a claim that the trial court erred by failing to properly instruct a jury, a petitioner must show the trial court committed an error that

---

[5] The Ninth Circuit has repeatedly held that, in deciding whether a constitutional rule is "new" for Teague purposes, the Court is not limited to surveying Supreme Court precedent, but rather may also consider Circuit precedent. See, e.g., Butler v. Curry, 528 F.3d 624, 635 n.10 (9th Cir. 2008); Leavitt v. Arave, 383 F.3d 809, 819 (9th Cir. 2004) (per curiam).

[6] The first exception applies to those rules that "plac[e] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Teague, 489 U.S. at 307 (quoting Mackey v. U.S., 401 U.S. 667, 692 (1970). The second exception permits the retroactive application of "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding. Id. at 311; see also id. at 313-14 ("Because . . . such procedures would be so central to an accurate determination of innocence or guilt, . . . it [is] unlikely that many such components of basic due process have yet to emerge."). Neither exception is applicable here.

"so infected the entire trial that the resulting conviction violates due process." Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). When a petitioner's claim is based on an omission or an incomplete instruction, his burden is especially heavy. Id. at 155 ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."). In making this determination, the jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Waddington v. Sarausad, 555 U.S. 179, 191 (2009) (internal quotation marks omitted). Even if Petitioner can demonstrate that the instruction violated his right to due process, habeas corpus relief may only be granted if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted); see also Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

Petitioner contends that because the prosecutor did not specify which two of Petitioner's five statements the jurors were to consider in assessing his guilt under Section 422, the trial court was required under California law to sua sponte instruct the jurors that they must unanimously agree as to which two statements constituted criminal threats. FAP at 5-6, 37; see People v. Melhado, 60 Cal. App. 4th 1529, 1534 (1998) (holding that when defendant charged with single criminal act but evidence tends to show more than one such act, "either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal

act"). Petitioner further contends that the trial court's failure to give a unanimity instruction violated his federal right to due process. See FAP at 41-43; Smith, 132 Cal. App. 4th at 1545-46.

The California Court of Appeal assumed without deciding that the trial court erred but found that any error was "harmless beyond a reasonable doubt." LD 6 at 6-7; Chapman, 386 U.S. at 24. Although California law mandates that a jury verdict in a criminal case be unanimous, under the state's "continuous conduct" rule, a unanimity instruction is not required if "the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them." Stankewitz, 51 Cal. 3d at 100. The Court of Appeal found that no rational basis existed for the jury to believe that Petitioner made one threat but not another because the threats occurred over a short period of time and "in the same location – the back seat of [Petitioner's] car"[7] and because Petitioner offered the same defense of mistaken identity as to both counts. LD at 7. Although the classification of Petitioner's criminal threats as separate for purposes of sustaining two convictions but part of a "continuous course of conduct" for purposes of satisfying the state's jury unanimity requirement is not entirely convincing, this Court is bound by the state appellate court's interpretation of California law. Bradshaw, 546 U.S. at 76.

To the extent Petitioner argues that the failure to instruct the jury violated his federal rights, he also fails to state a claim. There is no federal Constitutional right to a unanimous jury verdict in a state criminal trial. Rather, the Supreme Court has consistently held that a defendant has no

---

[7] In fact, according to the Court of Appeal's summary of the facts, at least one of the threats occurred outside the car, although Sanchez was continuously detained by Petitioner. See LD 6 at 3-4.

Constitutional right to jury unanimity in a noncapital case. See McDonald v. Chicago, 561 U.S. 742, 766 n.14 (2010); Schad v. Arizona, 501 U.S. 624, 634 n. 5 (1991); Apodaca v. Oregon, 406 U.S. 404, 410-13 (1972). Because no Supreme Court precedent clearly establishes that a state criminal defendant is entitled to a unanimous jury verdict, the appellate court's rejection of Petitioner's unanimity claim could not have been contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1); Wright v. Van Patten, 552 U.S. 120, 126 (2008); see also Hassan v. Morawcznski, 405 F. App'x 129, 131-32 (9th Cir. 2010) (concluding that state trial court's failure to give unanimity instruction did not entitle petitioner to habeas relief because "Supreme Court has never held jury unanimity to be a requisite of due process of law" (internal quotation marks omitted)).

Nor has Petitioner established that the trial court's failure to give a unanimity instruction so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72. Here, the evidence of the five statements came from the same source, Sanchez, and thus was indistinguishable as to credibility. Sanchez testified that Petitioner was armed when he made each statement and that Sanchez understood each statement to be a threat to kill him if he did not comply. And Petitioner offered to the charges of criminal threats only the defense of mistaken identity. Thus, the evidence provided no basis upon which to distinguish between Petitioner's statements – i.e., determining one to constitute a criminal threat but not another – making it unlikely that the jurors would find only some of Petitioner's five statements to constitute criminal threats.

Moreover, even assuming that the trial court erred by failing to give a unanimity instruction, Petitioner has not shown that the error had a substantial and injurious effect or influence in determining the jury's verdict. See Brecht, 507 U.S. at 637-38. The evidence presented a clear story of what happened,

and the evidence of Petitioner's guilt was overwhelming. Although Petitioner claimed mistaken identity, Petitioner's pursuit of his ex-girlfriend's friend through interactions with the bakery manager and Sanchez and Petitioner's possession of Sanchez's identification card were strong circumstantial evidence of Petitioner's guilt.

Thus, the California Court of Appeal's rejection of Petitioner's unanimity claim was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court. See 28 U.S.C. § 2254(d).

## IV.
## CONCLUSION

IT IS THEREFORE ORDERED that the Petition is DENIED. Let judgment be entered dismissing this action with prejudice.

Dated: August 27, 2015

**DOUGLAS F. McCORMICK**

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge